## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 7028 | **DATE** | 9/30/2004 |
| **CASE TITLE** | Peeples vs. Blatt, et al. | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Order. Plaintiffs' motion for summary judgment [77-1] is denied and defendants' motion for summary judgment [78-1] is granted. Defendants' motion to strike [88-1] is denied. Plaintiffs' motion to strike [89-1] is granted in part and denied in part. Case Terminated.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | SEP 3 0 2004 date docketed | 99 |
| X | Docketing to mail notices. | docketing deputy initials | |
| X | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | | |
| | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

LINDA PEEPLES and ROSELYN A. ARMOUR,

    Plaintiffs,

vs.

JOHN D. HASENMILLER, et al.,

    Defendants.

Case No. 00-C-7028

Judge Joan B. Gottschall

SEP 3 0 2004

## MEMORANDUM OPINION AND ORDER

Plaintiffs Linda Peeples and Roselyn Armour have sued the law firm of Blatt, Hasenmiller, Leibsker & Moore (the "Blatt Firm") and its controlling partners, alleging that the Blatt Firm's communications to plaintiffs regarding the repossession and redemption of plaintiffs' merchandise violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692e, 1692f. Before the court are the parties' cross-motions for summary judgment. For the reasons stated below, plaintiffs' motion for summary judgment is denied and defendants' motion for summary judgment is granted.

## BACKGROUND [1]

Peeples and Armour separately purchased merchandise from Sears using their Sears credit cards. On February 24, 1999, Peeples purchased a washer for $359.99 and a dryer for $239.99. Armour purchased a VCR in March of 1999 for $88.49 and purchased an air conditioner in June of 1999 for $208.99. Sears retained a purchase money security interest ("PMSI") in the merchandise.

---

[1] Plaintiffs have moved to strike ¶¶ 10-12 of defendants' Local Rule 56.1 Statement of Facts. The court finds that those paragraphs state legal conclusions rather than material facts. Moreover, the only authority cited in support of those paragraphs is defendants' Answer. Paragraphs 10-12 of defendants' statement of facts do not meet the L.R. 56.1 standard and, therefore, are stricken. Of course, the court's ruling does not preclude defendants' from making the legal arguments contained in those paragraphs.



Before plaintiffs paid for their purchases, plaintiffs each declared Chapter 7 bankruptcy. After the bankruptcy court entered discharge orders, plaintiffs were no longer personally liable for their unpaid debt to Sears. However, Sears' security interest survived bankruptcy and, therefore, Sears had the right to repossess the merchandise if it desired. It is undisputed that both plaintiffs understood that their debt to Sears was discharged in their respective bankruptcies and that, therefore, they no longer owed Sears any money. Plaintiffs also understood that Sears had the right to get the merchandise back.

After plaintiffs entered bankruptcy, Sears retained the Blatt Firm to request the return of the secured merchandise and, if necessary, to commence replevin proceedings to ensure the return of the goods. The Blatt Firm had represented Sears in bankruptcy and collection matters since the 1980's. The Blatt Firm started the process by sending virtually identical letters to Peeples and Armour, stating:

> Please be advised that this firm represents the above named creditor with respect to the account referenced above. Our client has requested our assistance to recover the security on the account.
>
> We have confirmed that you have been discharged in the above Chapter 7 case, thereby discharging the debt that was due our client. However, our client claims a purchase money security interest in certain merchandise purchased on this account, and that security interest is not extinguished by your discharge in the bankruptcy. The secured merchandise on this account is the following:
>
> [DESCRIPTION OF SECURED MERCHANDISE]
>
> Sears has made prior demand(s) for the return of these goods without success. This is the final demand for the return of this merchandise. Please call me at 800-850-1079 and press 9344 when asked by the auto-attendant for the extension number. Please contact us at your earliest opportunity.

**Redemption of Peeples's Merchandise**

After reading the letter, Peeples understood that the Blatt Firm sought the return of the washer and dryer but she did not call the phone number on the letter to arrange for the merchandise's return. Consequently, on August 8, 2000, the Blatt Firm filed a Complaint in Replevin against

Peeples. Peeples appeared in court on September 5, 2000 where she informed attorneys from the Blatt Firm that she was willing to pay to keep her washer and dryer. Consequently, the Blatt Firm provided Peeples with a Redemption Agreement dated September 5, 2000 which states in relevant part that:

> I, Linda Peeples, hereby elect to redeem the personal property listed below from the purchase money security interest(s) held by Sears Roebuck & Co. or one or more of its affiliates ("Sears"). Sears and I have agreed that the amount set forth below represents the value of the property and that the redemption payment shall equal that value. I understand that if I had disagreed with this valuation, but still wished to redeem, I could have sought a court order regarding value. The property in possession is in good condition.
>
> ... I understand that I no longer owe Sears any money due to my recent discharge under federal bankruptcy laws. I understand that this agreement imposes no personal liability on me for the redemption amount, Sears' only recourse will be against the property.

Sears informed the Blatt Firm that the washer was worth $277.19 and the dryer was worth $184.79. Based on Sears' valuation, the Redemption Agreement required Peeples to make a lump sum redemption payment of $461.98 (roughly 23% less than she originally paid over 18 months earlier). Defendants had no input in Sears' valuation decision, did not know what Sears' valuation process entailed and did not conduct an independent analysis of the value of the secured merchandise.

Sears' valuation methods were, to say the least, of inconsistent quality. Sears determined the value of the secured goods using a valuation and depreciation table it developed with the accounting firm of Deloitte and Touche. Those depreciation tables were derived in part from the Orion Blue Books which list retail values for various products. However, where the Blue Book did not contain sufficient data, Deloitte and Touche collected data from other – allegedly less reliable – sources. Plaintiffs allege that Sears' valuation method was defective because, *inter alia*, (1) Sears did not appraise each secured item to determine its value, (2) Sears' valuation tables did not account for the condition of the goods and (3) Sears' valuation tables were organized by product category without distinguishing between different products within the same category. Plaintiffs allege that Sears'

valuation tables unreasonably inflated the fair market value of the merchandise, thereby pumping up the value of Sears' security interest. Plaintiffs point out that the District Court in *In re Melendez*, 235 B.R. 173, 184 (D. Mass. 1999) – an unrelated case – found that, for some categories of goods, Sears' valuation techniques were "invalid."[2] Although plaintiffs attack Sears' valuation methods as "bogus," plaintiffs make no allegations regarding the true fair market value of the items at issue in this case.

Peeples executed the Redemption Agreement on September 5, 2000. However, she did not make the payment required by that Agreement and Sears repossessed Peeples's washer and dryer.

### Redemption of Armour's Merchandise

After receiving the initial letter from the Blatt Firm, Armour informed the Blatt Firm that she wanted to keep her air conditioner and VCR. Consequently, on October 6, 2000, the Blatt Firm sent Armour a redemption form substantially identical to the form sent to Peeples. In a cover letter, the Blatt Firm informed Armour that she could redeem her merchandise for a lump sum payment of $187.40. Armour did not respond to the redemption offer and, therefore, on November 28, 2000, the Blatt Firm filed a Complaint in Replevin against Armour seeking the return of the merchandise.

Armour attended a court hearing on January 9, 2001 and informed attorneys from the Blatt Firm that she was willing to pay to keep the VCR and air conditioner. On January 12, 2002, Armour signed a Redemption Agreement in the same form as the agreement entered into by Peeples. The Agreement valued the VCR at $35.05 (roughly 60% less than the original purchase price) and the air conditioner at $152.35. (About 27% less than the purchase price). Again, that value was

---

[2] Defendants have filed a motion to strike several of the allegations included in plaintiffs' L.R. 56.1 statement of facts, including plaintiffs' allegations regarding the *Melendez* holding. Defendants' motion to strike is denied. However, the court notes that plaintiffs' characterization of the *Melendez* holding is not entirely correct. While the *Melendez* court held that several of the myriad valuation methods employed by Sears were not valid, the court did not describe the valuation tables as "fraudulent" and did not find that Sears' methods were designed to inflate systematically the value of Sears' security interest. In fact, the court's analysis in *Melendez* reflects that Sears' valuation methods had few, if any, design principles.

determined by Sears based on its valuation and depreciation tables. The Blatt Firm played no role in valuing Armour's merchandise. Unlike Peeples, Armour redeemed her merchandise from Sears' security interest: she sent a check to the Blatt Firm for the full amount and the Blatt Firm forwarded the check to Sears.

## ANALYSIS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When considering a motion for summary judgment, the court must view the record and any inferences to be drawn from it in the light most favorable to the party opposing summary judgment. *See Griffin v. Thomas,* 929 F.2d 1210, 1212 (7th Cir.1991). The party opposing summary judgment may not rest upon the pleadings, but "must set forth specific facts showing that there is a genuine issue for trial ." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). There is no genuine issue for trial unless there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Id.*

The primary goal of the Fair Debt Collection Practices Act is to protect consumers from abusive, deceptive, and unfair debt collection practices. *Jenkins v. Heintz,* 124 F.3d 824, 828 (7th Cir. 1997). Plaintiffs allege that the Blatt Firm's replevin and redemption procedures violated (1) FDCPA Section 1692e, which prohibits "false, deceptive or misleading" collection activities, and (2) FDCPA Section1692f, which prohibits any "unfair or unconscionable means to collect or attempt to collect any debt." *See Turner v. J.V.D.B. & Associates, Inc.,* 330 F.3d 991, 994 (7th Cir. 2003).[3]

---

[3] In its August 14, 2001 order on defendants' motion to dismiss, the court held that defendants' conduct is within the reach of the FDCPA notwithstanding the fact that plaintiffs' personal liability on their debt to Sears was discharged in bankruptcy. *See Peeples v. Blatt,* 00-C-7028, 2001 WL 921731 (N.D. Ill. Aug. 15, 2001). Despite defendants' renewed argument on that issue, the court will not deviate from that decision and will not repeat its analysis here.

Plaintiffs allege that defendants violated those FDCPA provisions by providing false information to plaintiffs regarding the redemption value of the secured merchandise. Specifically, plaintiffs allege that defendants' letters and redemption agreements contained redemption values based on "fraudulent" valuation tables allegedly designed to inflate the value of Sears' security interest.

To prove their claim, plaintiffs must prove that defendants' representations regarding the value of the secured merchandise were false. However, while plaintiffs allege that Sears' valuation methodology was flawed for various reasons, they have not pointed to any evidence reflecting that Sears' methods overvalued goods such as those in this case and have not provided the court with any information regarding the actual value of the secured merchandise. Plaintiffs' expert criticizes Sears' depreciation tables but provides no analysis of how the goods should be valued under the proper methodology. In other words, plaintiffs have not pointed to any evidence that Sears' valuation of plaintiffs' merchandise does not reasonably approximate the fair value of those goods.[4]

Moreover, even if the Blatt Firm's representations regarding the value of the secured goods were "false," the undisputed evidence establishes as a matter of law that the Blatt Firm cannot be held liable under the FDCPA for that error. The FDCPA absolves debt collectors of civil liability if their violation of the FDCPA was the result of a *bona fide* error. To establish a *bona fide* error defense, defendants must prove that (1) defendants' violation of the FDCPA was unintentional and (2) defendants instituted procedures reasonably adapted to avoid the violation. 15 U.S.C. § 1692k(c).

The only alleged FDCPA violation in this case is that the stated value of the merchandise was incorrect. However, the undisputed facts establish that any FDCPA violation by the Blatt Firm

---

[4] Plaintiffs also fail to point to evidence reflecting that the flaws in certain aspects of Sears' valuation system influenced the valuation of plaintiffs' merchandise.

resulting from Sears' valuation process was unintentional. The undisputed facts reflect that the Blatt Firm had nothing to do with Sears' valuation of plaintiffs' merchandise. It simply received the redemption values from Sears and included those values in the Redemption Agreements. Plaintiffs have not pointed to any evidence that the Blatt Firm knew what Sears' valuation method was, let alone understood that there were problems with that method.

Plaintiffs argue that – regardless of whether the Blatt Firm's alleged error was unintentional – defendants cannot avail themselves of a *bona fide* error defense because they did not have procedures in place to ensure that the redemption value of the goods was accurate. In essence, plaintiffs argue that the Blatt Firm was obligated to conduct its own investigation into each valuation performed by Sears. However, plaintiffs fail to cite any authority demonstrating that such a duty exists. To the contrary, the Seventh Circuit has held that debt collectors do not have an independent duty to double-check whether their creditor-clients' claimed debt is legally viable. *See Jenkins v. Heintz*, 124 F.3d 824, 833 (7th Cir. 1997). There are any number of FDCPA errors that reasonable collection attorneys should actively seek to avoid by creating procedural safeguards. However, the court does not believe that Congress intended to require collection attorneys to create entire departments dedicated to independently investigating their clients' valuation of a debt. The undisputed facts reflect that the Blatt Firm had reasonable procedures in place to ensure that the redemption process complied with the FDCPA. The fact that the Blatt Firm took Sears' valuation of the merchandise at face value does not prevent the Blatt Firm from availing itself of the *bona fide* error defense.

Because the undisputed facts demonstrate as a matter of law that any FDCPA violation by the Blatt Firm relating to the valuation of plaintiffs' merchandise was the result of a *bona fide* error, defendants may not be held liable under the FDCPA and are, therefore, entitled to summary judgment on plaintiffs' claims.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for summary judgment is denied and defendants' motion for summary judgment is granted.

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATED: September 30, 2004